<br>

**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:20-CR-45(1) |
| | § | |
| TIMOTHY CRAIG TRUAX | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Timothy Craig Truax's ("Truax") *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) and Motion to Appoint Counsel (#57). Truax seeks compassionate release based on his medical condition and also requests the appointment of counsel. The Government filed a Response in opposition to his motions (#59). United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny his motions. Having considered the motions, the Government's response, Probation's recommendation, and the applicable law, the court is of the opinion that the motions are without merit.

I.      <u>Background</u>

On June 3, 2020, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned an Indictment against Truax, charging him in Count 1 with Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 841(a)(1). Truax pleaded guilty to the sole count of the Indictment pursuant to a written plea agreement on April 28, 2021. On May 14, 2021, Truax filed a Pro Se Motion to Withdraw Plea of Guilty and Motion to Substitute New Attorney (#36), which the court denied on June 3, 2021 (#38). Nonetheless, on June 25, 2021, the court granted his motion to substitute attorney Charles McIntosh for his prior attorney (#41). On September 15, 2021, the late Judge Thad Heartfield

sentenced Truax to 150 months' imprisonment to be followed by 5 years of supervised release (#50). He is currently housed at Federal Correctional Institution Oakdale I, located in Oakdale, Louisiana. Truax's projected release date is April 25, 2031.

II.    Appointment of Counsel

Truax requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. 232, 245-46 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir. 2013). Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th

Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D. Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Truax is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582.  *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings.").  Moreover, Truax provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion.

A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, in this situation, he has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel.

Truax is 39 years old, earned a General Equivalency Diploma in 2008, and gives no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Truax's motion for appointment of counsel is DENIED.

III.    Compassionate Release

A.    Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence.  *Id*. § 1B1.13(b)(1)-(6).  The Fifth Circuit has clarified, however, that "prisoners have extraordinary and compelling reasons for relief 'only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)    the defendant must have exhausted his administrative remedies;

(2)    "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)    the reduction must be consistent with the Commission's applicable policy statements; and

(4)    the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release or sentence reduction unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after

7

the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id*.

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021). Further, "the exhaustion requirement applies to new arguments or

grounds for compassionate release developed after an earlier request for compassionate release."
*United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022)
(citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*,
2023 WL 307459, at *2.

Here, Truax appears to have exhausted his administrative remedies. Truax states in his
motion that on January 10, 2024, he submitted a request for compassionate release to the warden
of the institution where he was incarcerated. Although Truax did not attach a copy of his request
to the warden, he submitted a copy of the warden's response. On January 22, 2024, Felipe
Martinez, Jr., the Complex Warden at FCC Oakdale denied Truax's request for compassionate
release/reduction in sentence. While neither document mentions the basis for his request for
compassionate release, the court assumes that he advanced the same reason as in his current
motion—the effects of the amputation of the second toe on his right foot in March 2022. Thus,
while not entirely clear, the court assumes that Truax exhausted his administrative remedies.
Nonetheless, even if there is some question as to proper exhaustion, because the Government does
not invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief, it has waived
any nonjurisdictional, procedural filing requirements. *See McLean*, 2022 WL 44618, at *1
(holding that it is an abuse of discretion for the district court to deny a motion for compassionate
release based on a purported failure to comply with § 3582(c)(1)(A)'s exhaustion requirement
when the Government did not raise exhaustion). Nevertheless, although Truax may have complied
with the exhaustion requirement before filing his motion for compassionate release, nothing in the
motion indicates that extraordinary and compelling reasons exist to release him from confinement
or reduce his sentence of imprisonment.

C.    <u>Medical Condition</u>

As the basis for his motion, Truax states that he "had a toe amputated." He contends that "due to the pain" and his "limited ability to walk," he "often skip[s] meals" and "sit[s] in [his] cell." He maintains that he "lay[s] in his bunk most of the day because [he] is depressed." He comments that "more th[an] 18 months later [he] still [has] chronic pain and discomfort in [his] foot." He elaborates, "Due to my right foot missing a toe I walk funny and can not take care of myself as I use[d] to." Truax, however, presents only limited medical records and documentation addressing his medical condition.

With respect to a defendant's medical circumstances, § 1B1.13(b)(1)(A), (B), and (C) state that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(A)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

U.S.S.G. § 1B1.13(b)(1)(A).

(B)    The defendant is—

(i)    suffering from a serious physical or medical condition,

(ii)    suffering from a serious functional or cognitive impairment, or

(iii)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

10

U.S.S.G. § 1B1.13(b)(1)(B).

> (C)    The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C).

Truax does not assert that he is suffering from a terminal illness or injury.  While he seems to regard his amputated toe as a serious medical condition and functional impairment, the record does not support his assessment of the situation.  Truax also does not demonstrate that the amputation of his toe, which occurred over three years ago, requires specialized medical care that is not being provided and, without which, he is at risk of serious deterioration of his health or death.

> By letter dated August 23, 2024, Probation confirms:

> Mr. Truax is classified as a Care Level 1 when it comes to mental health.  This is the lowest care level and means his needs are limited and easily managed by clinical evaluations and care within the facility.  Mr. Truax is currently prescribed Mirtazapine 15 MG for mood disorder – depression/anxiety.  Current records show no suicidal or homicidal ideations.  When it comes to his medical care, he is designated a Care Level 2.  He is stable and his care is ongoing and managed through routine, regularly scheduled appointments with physicians for monitoring his status.  He had his second toe on his right foot amputated in March of 2022.  He was prescribed Ibuprofen 800 MG.  He was given crutches and medical shoes around the time of, and after, his surgical procedure.  He has not been restricted to a wheelchair at this time and appears to be able to walk on his own with an adjusted gait.

A review of the medical records attached to Truax's motion reveals that he initially had surgery on his toe at Christus St. Elizabeth Hospital in Beaumont, Texas, on July 16, 2021, while in pretrial detention.  At that time, Jason J. Willis, DPM ("Dr. Willis"), performed the procedure and treated him for an abscess to his dorsal right second toe and second metatarsophalangeal joint.  Necrotic material was removed from his toe, but it remained intact.  He was treated

11

post-operatively, had several follow-up appointments, and recovered throughout the summer of 2021. Truax was regularly monitored, but by September 22, 2021, he was diagnosed with osteomyelitis. Dr. Willis observed that the majority of Truax's wound appeared to be improving although there was clearly exposed bone at a joint in his right second toe. He explained both conservative versus surgical treatment options to Truax.

On October 20, 2021, when Truax was confined at Federal Correctional Institution El Reno ("FCI El Reno"), medical providers noted that there was an open wound on his right second toe with erythema (redness) and swelling. They ordered an X-ray and an MRI of his right foot, prescribed medication (Bactrim) for his toe infection and pain (ibuprofen), and continued his medication Remeron (mirtazapine) for a mood disorder. Truax described his mental condition as experiencing anxiety more than depression. He was advised of the possibility of losing the second toe of his right foot. He was continued on this treatment plan throughout the fall of 2021. On December 10, 2021, Truax reported to Health Services that the wound was getting smaller, just slowly. The medical provider observed that the toe was erythematous (red) and a small amount of pus was coming from the area where the toenail used to be. The provider restarted a course of Bactrim.

On December 22, 2021, Truax was seen by an orthopedic specialist, K. Mason ("Dr. Mason"). Truax advised that the wound was healing. The provider described it as a pin-point open wound, with slight drainage, decreased ROM (range of motion), and minimal erythema. Dr. Mason recommended an MRI and the continuation of Bactrim. On December 28, 2021, a medical record reflects that upon his return from obtaining an MRI, Truax voiced no complaints. On January 3, 2022, an administrative note in the medical records indicates that the MRI of Truax's

right second toe confirmed acute osteomyelitis.  On January 19, 2022, the orthopedic specialist, Dr. Mason, examined Truax's toe and noted that the "exam was unchanged from previous."  Dr. Mason confirmed that the MRI was positive for acute osteomyelitis and recommended amputation of the right second toe.  At a clinical encounter on February 23, 2022, Spencer Zeavin, MD/CD ("Dr. Zeavin"), increased the dosage of Truax's Remeron prescription.  When Truax complained that he was having pain in his right second toe, Dr. Zeavin replied that he would be having surgery in the near future involving the amputation of the toe.  The medical records furnished by Truax contain no entries regarding other medical problems affecting Truax and provide no explanation for the underlying cause of his osteomyelitis.

The medical records also contain no surgical reports regarding Truax's toe amputation, and it is unclear when or where the procedure occurred.  A BOP medical record dated March 24, 2022, describes a return encounter from a medical trip which states, "Inmate returns from R second toe amputation.  No complaints.  No prescriptions returned with inmate.  Will give pain meds and antibiotics.  Inmate given Darco shoe to wear and crutches.  Bandage change in 48 hours.  [W]ill evaluate wound care needs at that point."  With respect to "Pain," the record states "No."  The assessment reads: "Amputation, complete traumatic, toe," "Local infection of skin and subcutaneous tissue, unspecified," and "Osteomyelitis, unspecified."  The record reflects that Truax was prescribed acetaminophen/codeine for pain and sulfamethoxazole/trimeth for the infection, was given a two-week lay-in, and was assigned a lower bunk.  Truax supplied no additional medical records after March 24, 2022, although he did not file his motion for compassionate release until July 26, 2024, over two years later.  In his Proposed Release Plan, however, Truax lists the same medications referenced above—mirtazapine and ibuprofen.  He also

notes that he requires a walker, but indicates that he does not require assistance with self-care such as bathing, walking, or toileting, and states he has no need for assisted living.

Under these circumstances, Truax has not demonstrated that he is entitled to compassionate release. He has not shown that he has an extraordinary and compelling reason for relief. There is no evidence in the record that Truax "face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner.'" *Austin*, 125 F.4th at 692 (quoting *Escajeda*, 58 F.4th at 186). None of Truax's medical conditions are terminal, require specialized care, or substantially diminish his ability to provide self-care within the context of a correctional facility, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433-34 (5th Cir. 2021). In fact, Truax has supplied numerous certificates documenting a variety of educational and recreational courses he completed during 2022 and 2023, after his toe amputation. Of particular interest is a certificate acknowledging that he completed the "eight week walk/run program" at FCI El Reno on August 26, 2022. This documentation appears to refute the notion that Truax is incapacitated by his toe amputation or that he spends most of the day on his bunk or in his cell.

Moreover, courts have denied motions for compassionate release filed by prisoners who have experienced toe amputations even when accompanied by other medical problems. *See United States v. Ware*, No. 3:15-CR-0494-B-2, 2023 WL 2754345, at *2 (N.D. Tex. Mar. 31, 2023) (denying compassionate release to inmate with an enlarged heart along with heart arrythmia and hypertension who had undergone arterial bypass surgery, had two toes amputated, and suffered three strokes, finding that nothing before the court indicated that his personal circumstances rose to the level of extraordinary and compelling); *United States v. Morales*, No. 4:13-CR-200(4),

14

2020 WL 5505904, at *3-4 (E.D. Tex. Sept. 11, 2020) (rejecting motion for compassionate release filed by inmate with diabetes, kidney disease that required dialysis, amputation of the toes of both feet, heart issues that necessitated double bypass surgery, legal blindness, and a back injury, observing that the prisoner relied on a wheelchair to get around the facility and that he was able to perform the activities of daily living and provide self-care with minimal or no assistance); *United States v. Lotts*, No. CR 08-1631 JAP, 2020 WL 835298, at *3-4 (D.N.M. Feb. 20, 2020) (denying motion for compassionate release filed by 70-year-old inmate who reportedly suffered from diabetes, asthma, congestive heart failure that required angioplasty, high blood pressure, severe arthritis to his hands, knees, and feet, and the amputation of a toe for lack of sufficient supporting medical evidence). Similarly, Truax's medical condition centering on his amputated toe that purportedly causes him to "walk funny" and to "sit in [his] cell" or "lay in [his] bunk most of the day" does not merit compassionate release. In this instance, Truax's reported medical condition is not serious, does not require specialized medical care, does not substantially diminish his ability to provide self-care in the prison setting, and does not limit his activities of daily living, as he claims. Based on the record before the court, Truax has not established an extraordinary and compelling reason warranting his release.

    D.    <u>Section 3553(a) Factors</u>

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (holding that the court did not

abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  The case at bar arose from a traffic stop of a Volkswagen Jetta conducted on March 22, 2020, in Hamshire, Texas, by officers with the Jefferson County Sheriff's Office.  Officers had been following the vehicle and observed it traveling approximately 85 mph in a 75 mph zone and the driver's changing lanes without signaling.  They approached the vehicle and identified the driver as Truax and the front seat passenger as Kassiddi Wright ("Wright").  Truax exhibited signs of nervousness and officers asked him for permission to search the vehicle, which he granted.  Wright also consented to the search of her belongings.  During the search, officers recovered a ledger, several large zip-lock bags containing 1,388 grams of "actual" methamphetamine secreted in the side paneling of the car, 38.8 grams of marijuana gummies, and 188 grams of Xanax pills.  Truax and Wright were taken into custody.  Truax told the officers that he had just left Houston where he had picked up 54 ounces of methamphetamine and 700 Xanax pills.  A DEA agent determined that the amount of "actual" methamphetamine was indicative of an amount suitable for distribution and not for personal use.

At the time of his sentencing in 2021, Truax had an extensive criminal history, which includes prior convictions for possession of marijuana, possession of a controlled substance (methamphetamine) (2x), failure to identify as a fugitive from justice, theft of property, possession of a controlled substance (crack cocaine), possession of a controlled substance (pills) (2x), forgery of government financial instrument, and evading arrest with a vehicle.  Truax also had pending related state drug charges and a 2020 charge for organized scheme to defraud in Florida.  He

violated a term of probation in 2012 after which his probation was revoked.  Truax was on parole for two prior convictions at the time of the instant offense.  As a result, Truax accumulated a total of 19 criminal history points, 6 points above the 13 criminal history points needed to reach the highest criminal history category of VI.

Like the prisoner in *United States v. Jones*, Truax is "the quintessential career offender." 852 F. App'x 60, 61 (3d Cir. 2021).  As in *Jones*, Truax was assessed a criminal history category of VI because of his long history of criminal behavior since age 22, with most gaps in that behavior occurring only during times of incarceration.  *Id*. at 61-62.  In short, Truax's "criminal history and conduct reflect an unabated propensity for crime."  *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).  Moreover, Truax has a history of poly-substance abuse which includes the frequent use of marijuana and methamphetamine and the occasional use of Ecstasy and alcohol.  Further, as Probation points out, the fact that Truax was on state parole when the instant federal offense was committed indicates a higher risk for recidivism.  Indeed, Truax's history of violating probation and parole "calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted."  *See United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *3 (E.D. Tenn. Nov. 2, 2021).  The court need not reach that question, as Truax does not qualify for compassionate release in view of his significant history of drug-trafficking and other criminal activities.

Courts have long recognized that "continued drug dealing" "constitute[s] a danger and threat to the community."  *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-cr-107-SDJ, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9,

2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate release to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020) (citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'"))). Nonetheless, Truax received an extremely favorable sentence in this case. First, he was accorded a 3-point reduction for acceptance of responsibility despite his efforts to withdraw his guilty plea. Moreover, the Guidelines imprisonment range was calculated as 188 to 235 months, but he was sentenced to only 150 months' imprisonment, which was to run concurrently with any sentence imposed for his related state drug charge and for his pending felony charge in Florida, but consecutively to any sentence imposed for the revocation of his parole.

Under these circumstances, granting Truax compassionate release would fail to provide just punishment for his offense of conviction or promote respect for the law. "[C]ompassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18

18

U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of his offense of conviction, his extensive criminal history, and his history of substance abuse, the court cannot conclude that Truax's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, the Fifth Circuit upheld the denial of compassionate release in *Chambliss* due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitute[d] 'an extraordinary and

compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'"
but denied release because "releasing [the defendant] after serving only 14 years of a 30-year
sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."
*Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that
requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment
for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Id.* at 694; *see Rollins*, 53
F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted
compassionate release "largely have done so for defendants who had already served the lion's
share of their sentences and presented multiple, severe, health concerns"); *accord United States
v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022).  In the case at bar, releasing Truax, after he
has served only 62 months (or approximately 40%) of his 150-month sentence would similarly
minimize the impact of his crime and the seriousness of his offense as well as fall short of
providing just punishment and adequate deterrence to criminal conduct.

In *United States v. McKinney*, No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La.
Apr. 18, 2023), the court denied relief to a prisoner who had end-stage renal failure and had a
portion of his foot amputated despite the Government's concession that the defendant had
established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i),
finding that "granting compassionate release would not comport with the factors enumerated in
Section 3553(a)."  The court pointed to McKinney's extensive criminal history that included
several drug convictions, firearm convictions, and simple battery. *Id*. at *3.  The *McKinney* court
noted that the inmate had repeatedly failed to comply with the terms of probation and parole and
clearly lacked respect for the law.  *Id*.  The court concluded that a reduction in sentence would not

equate to a "just punishment" under Section 3553(a)(2)(A).  The court expounded:  "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect of the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant."  *Id.*  This court shares the same concerns in the case at bar.  On balance, as in *McKinney*, the § 3553(a) factors do not support Truax's release.

Probation also recommends against granting Truax compassionate release in this case.  His supervising probation officer states:

> In considering the circumstances in this case, it is my opinion the Court should deny this motion and allow Mr. Truax to finish the remainder of his original imprisonment term.  The instant offense involved a large-scale of illegal drugs and he has a history of similar crimes and violations of community supervision.  This would suggest a heightened risk to the community and for recidivism.  Though his toe was amputated over two years ago, records indicate he is stable and being treated appropriately for his medical and mental health needs by BOP clinicians.  He has no significant medical concerns, is not elderly, and presents no extraordinary or compelling reasons that would warrant such a release.

The court agrees with Probation's assessment of the situation.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Truax's track record is similarly a poor one.  In this instance, there is no reason to believe that he would not revert to his prior drug-dealing and drug-abusing behavior as well as other criminal activities if his sentence was reduced and he was released from prison.  *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021).  Like the court in *United States v. Lewis*, this court

concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Truax committed a serious offense that justified his sentence, and the circumstances he now identifies do not render that sentence unjust or inequitable. *See id.*

IV.    Conclusion

        In sum, Truax has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 150-month sentence of imprisonment imposed upon Truax for his offense of conviction comports with the § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this time. Neither the length of his incarceration, the alleged difficulties caused by his amputation of his toe, nor his mental health concerns merit a reduction of sentence under these circumstances. Accordingly, Truax's *pro se* Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) (#57) is DENIED.

        SIGNED at Beaumont, Texas, this 29th day of May, 2025.


_____
                        MARCIA A. CRONE
                UNITED STATES DISTRICT JUDGE

22